# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JAMES KELLY, | ) |
|  Plaintiff, | ) |
|  | ) 3:13-cv-00551-RCJ-WGC |
|  vs. | ) |
|  | ) |
| DON HELLING et al., | ) **ORDER** |
|  Defendants. | ) |

This case arises out of the suspension of a prison employee, allegedly in retaliation for protected speech. Defendants have moved for summary judgment. For the reasons given herein, the Court grants the motion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff James Kelly is a Senior Corrections Officer with the Nevada Department of Corrections ("NDOC"). (*See* Compl. ¶ 10, ECF No. 1-2). Plaintiff previously sued unidentified defendants when he was terminated, allegedly in retaliation for having complained about officer pay, discrimination, and other retaliation (the "First Lawsuit"). (*Id.* ¶ 8). The parties settled the First Lawsuit, with Plaintiff being reinstated to the rank of Lieutenant. (*Id.* ¶ 9).[1]

Before retiring in July 2011, Deputy Director of NDOC Don Helling issued two specifications of charges against plaintiff and recommended to Director of NDOC James Cox that Plaintiff be suspended without pay and demoted to Senior Corrections Officer. (*Id.* ¶¶ 2, 6,

---

[1]Plaintiff does not allege his rank before the First Lawsuit.

10).  Cox approved the recommendation. (*Id.* ¶ 11).  Helling and Cox acted in retaliation for plaintiff having filed the First lawsuit and for having previously complaining about discrimination and retaliation at NDOC. (*Id.* ¶ 12).

In November 2011, plaintiff again sued unidentified defendants, alleging that the suspension and demotion were based on unlawful retaliation (the "Second Lawsuit"). (*Id.* ¶ 13).  From late 2011 through April 2012,[2] plaintiff also filed requests for investigation with the Inspector General concerning alleged perjury by unidentified persons in unspecified matters and unspecified "threats" to personnel if staffing levels fell. (*Id.* ¶ 14).  On May 17, 2012, Plaintiff brought this matter, as well as alleged previous retaliation, to the attention of the Prison Board at one of its meetings. (*Id.* ¶ 16).[3]  The parties agreed to dismiss the Second Lawsuit without prejudice on November 28, 2012.

On May 4, 2013, Warden Isidro Baca recommended that Plaintiff be suspended. (*Id.* ¶ 17).  Cox and Deputy NDOC Director E.K. McDaniel approved the recommendation. (*Id.*).[4]  Plaintiff was suspended in retaliation for his previous protected activity.

Plaintiff sued Helling, Baca, McDaniel, Cox, Greg Smith, and the State of Nevada ex rel. NDOC in state court for First Amendment violations under 42 U.S.C. § 1983 and for negligent training and supervision.  Defendants removed and have now moved for summary judgment.

///

---

[2]The Complaint appears to contain a typographical error here. (*See id.* ¶ 14 ("Starting in late 2011, through April of 2011 . . . .")).

[3]Plaintiff does not allege whether he spoke as an NDOC employee at a private meeting, a Board member, or as a public attendee at a public meeting.

[4]The allegations at this point become chronologically impossible, and the Court will not attempt to sort out which portions of the allegations are in error. (*See id.* ("On May 4, 2013, Defendant Baca recommended Plaintiff be suspended and Defendants McDaniel and Cox approved that recommendation.  Plaintiff was suspended on February 19, 2013 for conduct that allegedly occurred on March 12, 2012 . . . .")).  The important allegation is that Plaintiff was suspended based on the previous activity.

## II. LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Moreover, unsupported claims and inadmissible evidence cannot aid either party in meeting its burden at summary judgment. "A trial court can only consider admissible evidence in ruling on a motion for summary judgment[, and] unauthenticated documents cannot be considered in a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

### III.   ANALYSIS

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). There is no respondeat superior liability under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Natural persons sued in their individual capacities (as all Defendants have been sued in this case) may have qualified immunity against claims of constitutional violations. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). An official is not

entitled to qualified immunity if: (1) there has been a constitutional violation; and (2) the state of the law was clear enough at the time of the violation that a reasonable person in the defendant's position would have known his actions violated the plaintiff's rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court has discretion to analyze the second prong first in order to avoid unnecessary constitutional rulings. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A "clearly established" right for the purpose of qualified immunity is one that has been announced by the Supreme Court or an applicable Court of Appeals, i.e., binding authority. *See Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004).

In order to find a state actor liable for a First Amendment retaliation claim, a plaintiff must show that the actor "by his actions . . . deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the officer's] conduct . . . ." *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994) (citing *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 14 F.3d 457, 464 (9th Cir. 1994)). "The defendant's intent *is* an element of the claim." *Mendocino*, 14 F.3d at 464. If no chilling occurred, or if a person of "ordinary firmness" would not have been silenced from future speech, there is no retaliation claim. *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

Internal grievances by public employees generally do not implicate the First Amendment. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *Desrochers v. City of San Bernardino*, 572 F.3d 703 (9th Cir. 2009). In *Desrochers*, four sergeants of the San Bernardino Police Department ("SBPD") filed an informal grievance about their supervisor, a Lieutenant. *See id.* at 705. When the Lieutenant found out about the grievance, he requested a transfer, which was granted, and the aggrieved sergeants had little to no contact with the Lieutenant thereafter. *Id.* at 706. Two of the sergeants resolved their grievance, but Sergeants Desrochers and Lowes went on to file a formal grievance against the Lieutenant, the Chief of Police, and the Captain who had adjudicated the informal grievance. *Id.* The formal grievance, which was supported by

declarations describing several incidents, essentially alleged that the Lieutenant was a bully who had created a "hostile work environment" and that neither the Captain nor the Chief of Police had taken appropriate steps to remedy the situation. *See id.* at 706–07. The Captain denied the formal grievance. *Id.* at 707. Desrochers and Lowes then filed a complaint with the City's Human Resources Department ("HR") against the Lieutenant, his replacement, the Captain, and the Chief of Police. *Id.* at 708. HR eventually denied the complaint. *Id.* Desrochers was transferred from the Homicide Unit to the Robbery Unit, which he characterized as a demotion, and Lowes had become the subject of an internal affairs investigation based on an arrest he had made, resulting in a two-week suspension. *Id.* at 704.

Desrochers and Lowes filed suit for, *inter alia*, First Amendment retaliation under § 1983, but the district court granted summary judgment to the defendants because the speech at issue did not address matters of public concern. *Id.* 708. The Ninth Circuit noted that analysis of a First Amendment retaliation claim consists of:

> a sequential five-step series of questions: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Id.* at 708–09 (quoting *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)). The district court had ended its inquiry at the first step. *Id.* at 709. The court noted that "the essential question is whether the speech addressed matters of 'public' as opposed to 'personal' interest," which is a question of law upon which a plaintiff bears the burden. *Id.* (citations omitted). The line is between "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government" on the one hand, *see id.* at 710 (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)), and "speech that deals with 'individual personnel disputes and grievances' and that would be of 'no

relevance to the public's evaluation of the performance of governmental agencies'" on the other, *see id.* (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (quoting *McKinley*, 705 F.2d at 1114)). The court rejected the plaintiffs' attempt to characterize their concerns about their supervisors' competence and the morale of the police force as issues of public concern as opposed to internal power struggles. *See id.* 710–11. The court used the following example:

> [W]hat if we judges prohibited our law clerks from taking coffee breaks? Suppose they responded with a memorandum complaining about the action. While they might assert—perhaps fairly—that caffeine deprivation would adversely affect their performance, morale, efficiency, and thus, their competency, no one would seriously contend that such speech addressed a matter of public concern.

*Id.* at 711. The Court made several further points. First, it is the content of the speech that matters, not a plaintiff's "post hoc characterizations" of the grievance. *Id.* Second, conclusory allegations of the "negative" effects of a supervisor's behavior are insufficient; a plaintiff must allege concrete negative results. *Id.* at 712–13. Third, the Court noted that Desrochers's claim that his speech was an issue of public concern was seriously undermined by the fact his grievance was purely internal. *Id.* at 714–15. The court concluded by stating that "while the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance." *Id.* at 718 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006)). In other words, griping about work conditions to coworkers or supervisors, without more, is not protected by the First Amendment such that retaliation therefor can support a § 1983 claim. *See id.* By contrast, where an employee's speech is in the form of trial testimony, for example, the employee is protected from retaliation. *See Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1104 (9th Cir. 2011) (distinguishing *Desrochers*).

      Defendants first argue that the claims are precluded. The Court agrees. Defendants have shown that Plaintiff brought two administrative actions pursuant to Nevada Revised Statutes ("NRS") chapter 233B based on the same set of facts as alleged in this case. (*See* Findings of Fact, Conclusions of Law, and Decision, ECF No. 21-5 at 21 (reversing the June 2011

1 suspension but affirming the July 2011 demotion); Findings of Fact, Conclusions of Law, and
2 Decision, ECF No. 21-10 at 12 (affirming the misconduct (drunken driving causing a collision)
3 and affirming the February 19, 2013 suspension in part)).  The Court of Appeals has clearly ruled
4 that constitutional claims not brought on judicial review of administrative rulings as permitted
5 under section 233B.135(3)(a) are precluded. *See Holcombe v. Hosmer*, 477 F.3d 1094,
6 1099–1100 (9th Cir. 2007) ("Holcombe's allegations concerning her § 1983 claims are based on
7 the same set of facts as her claims of wrongful termination litigated before the Nevada State
8 Personnel Commission and affirmed by the Nevada state court. Therefore, under Nevada law, her
9 § 1983 claims are precluded, and the district court properly dismissed Holcombe's claims.").
10 Likewise here, Kelly's allegations concerning his § 1983 claims are based on the same set of
11 facts as his claims of wrongful termination litigated before the Nevada State Personnel
12 Commission. (*Compare* Compl., *with* Findings of Fact, Conclusions of Law, and Decision, ECF
13 No. 21-5 at 21 *and* Findings of Fact, Conclusions of Law, and Decision, ECF No. 21-10 at 12).
14 Because the entirety of the facts potentially supporting the § 1983 claims here were encompassed
15 by the two administrative proceedings under chapter 233B, and because those proceedings were
16 judicially appealable under section 233B.135(3)(a), they are precluded from relitigation here.  As
17 the claims are precluded, the Court need not address them on the merits.  Plaintiff does not
18 address the preclusion issue in his opposition.
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 21) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 21st day of October, 2014.

_____
ROBERT C. JONES
United States District Judge